ISABELLE M. BOADWEE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10743.    Promulgated May 8, 1928.

*Meyer Bernstein, Esq.,* and *C. P. A.,* and *Moe Morris, C. P. A.,* for the petitioner.

*Harry Leroy Jones, Esq.,* and *John D. Kiley, Esq.,* for the respondent.

TRAMMELL: This is a proceeding for the redetermination of deficiencies in income tax of $5,161.72 and $83.25 for 1920 and 1921, respectively. The only matter in controversy is the fair market price or value at the time of acquisition of certain shares of corporate stock acquired by the petitioner as gifts from her husband in 1917 and 1919.

#### FINDINGS OF FACT.

On February 9, 1917, Russell K. Boadwee presented to his wife, the petitioner in this proceeding, 110 shares of capital stock of the Crown Silk Manufacturing Co., Bangor, Pa., and on March 5, 1919, he gave her 348 shares of stock in the same company. The total of these gifts constituted approximately one-half of Boadwee's holdings in the company as well as about one-half of the outstanding stock on March 5, 1919.

The Crown Silk Manufacturing Co. was organized in 1905 when there were very few manufacturers of silk gloves. The company made little progress and about 1912 was in an embarassing financial position due to insufficient working capital. At this time, Boadwee was approached in regard to investing in the company. He inter-

ested Horace Boyd and James W. Weaver in the corporation and the three invested $15,000 in the enterprise, each receiving 50 shares of a par value of $100 each of the company's stock. Boadwee became general manager of the company in 1913, and was president and treasurer from 1917 to 1919, when it went out of business as an active concern. He was a director continuously from 1913 to 1919. Boyd also was a director from 1913 until he sold his stock in 1919. He was also vice president of the company. In 1914, because of the inactivity of the silk market and a shortage of capital, it was necessary that the Crown Silk Manufacturing Co. obtain more money to carry on its business. As directors of the company Boyd and Weaver refused to endorse its notes. Boadwee agreed with them to assume all liability for the financing of the manufacture and sale of the products of the company and pay them 6 per cent on their holdings in consideration of their agreement to sell him their stock at par at such time or times as he would be able to purchase it.

Upon assuming active charge of the company in 1913, Boadwee proceeded to put it on a sound basis and from that time on it made profits each year except 1914. With the exception of the 6 per cent paid Boyd and Weaver on their capital stock, no dividends were paid from 1914 to 1918, but the profits were left in the business.

The net income, capital stock outstanding and surplus of the Crown Silk Manufacturing Co. for the years 1916 to 1919 were as follows:

| Year | Net income | Outstanding capital stock beginning of year | Surplus beginning of year |
|---|---|---|---|
| 1916 | $21,387.88 | $33,900 | $12,787.38 |
| 1917 | 21,664.15 | 33,900 | 34,175.26 |
| 1918 | 18,954.39 | 50,000 | 55,411.65 |
| 1919 | 36,394.55 | 78,600 | 67,938.75 |

During the years 1917, 1918, and 1919 the company issued stock as follows:

| Date issued | Number of shares | Cash received per share | Total |
|---|---|---|---|
| Feb. 8, 1917 | 115 | $100 | $11,500 |
| Feb. 28, 1917 | 9 | 100 | 900 |
| Nov. 27, 1917 | 37 | 100 | 3,700 |
| June 6, 1918 | 286 | 100 | 28,600 |
| Jan. 15, 1919 | 134 | 100 | 13,400 |

The par value of the outstanding capital stock of the company on September 30, 1919, was $92,000.

From 1914, Boadwee advanced capital to the corporation for the purpose of increasing its working capital and for the purpose of making expansions and improvements. He could have allowed the sum of these advances to remain as loans, but elected to accept stock for them in order that he might be able to present a more favorable statement to the company's creditors. During the years in which stock was being issued to Boadwee for advances made by him, he was in control of the corporation and regarded it much as his own business. While all of the stockholders of the company were given the privilege of subscribing at par to the stock issued by it in 1916, Boadwee was the only one to subscribe, with the possible exception of Boyd, who took 5 shares. In February, 1917, stock was issued to Boadwee for the cancellation of indebtedness owing by the corporation to him and all of the stock issued in 1918 and 1919 was taken by him.

Pursuant to the agreement made with Boyd and Weaver in 1914, Boadwee in 1917 purchased at par, or $100 per share, Weaver's 50 shares of stock, buying part of it before Weaver's death, which occurred in that year, and part after his death. In 1918, Boadwee purchased at par 50 of the 55 shares of stock then owned by Boyd.

In the latter part of 1917, or early in 1918, Boadwee purchased from the Hay estate, at $100 per share, from 100 to 120 shares of the Crown Silk Manufacturing Co. stock, some of which had been acquired as early as 1905. Hay, from whose estate the purchase was made, was acting president of the company in 1912 when Boadwee became interested in it. Hay continued to be interested in the management of the company until about 1916. In 1913 and 1914 he endorsed some obligations of the company, but at no time did the amount of these exceed $28,000. After 1916 he did not enter individually into any obligations of the company. On account of illness, Hay had been unable to be at the mill for almost 18 months prior to his death. During this time he continued to draw a salary of $300 per month and this fact was taken into consideration in determining the price at which the stock was sold to Boadwee.

About the end of 1918 Boadwee purchased at par from the Snyder estate 40 or 50 shares of the stock of the Crown Silk Manufacturing Co. Snyder, from whose estate the stock was purchased, was one of the original incorporators of the company and had died prior to Boadwee's connection with it. This stock had previously been offered for sale on the open market and between 1915 and 1918 one Boss, who was executor of the estate, approached Boadwee at least a dozen times in regard to selling the stock to Boadwee. Although Boss had been antagonistic to Boadwee during Boadwee's early

management of the corporation and did not assist the company financially, Boadwee purchased the stock after having decided in 1918 that he and the petitioner should own all the stock of the company.

From 1914 to about the middle of 1919 the above were the only sales of the company's stock. About June, 1919, a representative of Julius Kayser & Co. came to Bangor, Pa., for the purpose of purchasing fabric for manufacturing gloves, and while there offered Boadwee $150,000 for a one-half interest in the Crown Silk Manufacturing Co., which was declined because Boadwee did not wish to operate on the basis of a partnership. Boadwee, however, offered to sell the entire interest for $300,000. Julius Kayser & Co. had an appraisal made of the Crown Silk Manufacturing Co.'s assets and entered into an agreement with Boadwee to buy the entire amount of the stock of the latter company for $300,000. It was also agreed by Boadwee that he would not go into a similar business within a period of five years. The sale of the stock was not consummated until about October 1, 1919, as the Crown Silk Manufacturing Co. had a number of orders from jobbers that Boadwee wished to complete before turning the plant over to Julius Kayser & Co. About July 1, 1919, and subsequent to having agreed to sell the stock to Julius Kayser & Co., Boadwee received an offer from E. Z. Van Raälte of the Van Raälte Co. to pay $50,000 more for the stock than Julius Kayser & Co.

Subsequent to the time of making the agreement to sell the stock to Julius Kayser & Co., and just prior to the consummation of the sale, Boadwee acquired at $135 per share 5 shares belonging to Boyd and 3 shares belonging to one McConnell, an attorney for the Crown Silk Manufacturing Co. The stock owned by McConnell was shares received by him prior to 1912 as compensation for services.

While the sale of the entire amount of the capital stock of the Crown Silk Manufacturing Co., consisting of 920 shares, was consummated about October 1, 1919, the respondent determined that there was received in payment therefor a note for $75,000 due in 1921, and during the year 1920 cash in the amount of $225,000. The respondent was not able to determine the value of the note in 1920. It was paid in 1921.

The petitioner's books were kept on a cash receipts basis.

The fair market price or value of the stock of the Crown Silk Manufacturing Co. on February 9, 1917, was $175 per share and on March 5, 1919, was $227 per share.

*Judgment will be entered on 15 days' notice, under Rule 50.*